Filed 5/28/25  Guzman v. Leyva's Mexican Foods CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| TERESA GUZMAN,<br><br>　　　Plaintiff and Appellant,<br><br>　　v.<br><br>LEYVA'S MEXICAN FOODS INC. et al.,<br><br>　　　Defendants and Respondents. | B333370<br><br>(Los Angeles County Super. Ct. No. BC637544) |

　　　APPEAL from a judgment of the Superior Court of Los Angeles County, Anne Richardson, Judge.  Affirmed.

　　　Employee Justice Legal Group, Kaveh S. Elihu and Samuel J. Moorhead for Plaintiff and Appellant.

　　　Biggins Law Group and Chad Biggins for Defendants and Respondents.

————————————

Plaintiff and appellant Teresa Guzman sued her former employer, defendant and respondent Leyva's Mexican Foods Inc. (LMF) alleging that it violated the Labor Code[1] in several respects during the course of her employment. The parties and their counsel all have conducted themselves poorly during this litigation. We do not criticize Guzman's choice to bring her claims, nor LMF's to defend against them—everyone was entitled to access the courts. Rather, it is in some of the parties' other choices where things went awry. Guzman brought claims under the Private Attorneys General Act of 2004 (PAGA; § 2698 et. seq.) but sought damages as though she had filed a class action—without, of course, class members to receive their portion of any recovery. Guzman did not timely pursue key discovery; at trial, she did not testify as to some of the most rudimentary facts necessary to support her claims. LMF, for its part, engaged in misconduct by trying to persuade at least one witness and possibly more to opt out of discovery related to them, in addition to other related discovery abuses.

In the trial court, as on appeal, both counsel have spent more time attacking one another than setting forth legal argument. For example, LMF's appellate brief accuses Guzman and her counsel of "inan[ity]" (italics omitted) and telling "blatant[] untru[ths]." Guzman's counsel responded by accusing LMF and its counsel of "outright lying" and "criminality . . . best described as pathological." "[C]ounsel would be well advised to refrain from [such] incivility in the future." (*WasteXperts, Inc. v. Arakelian Enterprises, Inc.* (2024) 103 Cal.App.5th 652, 667.) "Ad

---

[1] Unless otherwise specified, subsequent statutory references are to the Labor Code.

hominem attacks and other invective detract from counsel's legal arguments, signal inappropriate personal embroilment in the dispute, and indicate an inability to engage in the reasoned analysis the courts need and counsel's clients deserve." (*Ibid.*)

Having reviewed the record, we commend the trial court's efforts to effect justice amidst all this. After a bench trial, the court agreed with two of Guzman's claims and awarded her $6,055.39 in unpaid overtime wages (§ 510), and $4,000 in penalties for failing to provide itemized statements of her wages and hours worked for each pay period (§ 226). The court later awarded Guzman $174,623.14 in attorney's fees and costs.[2]

Guzman appeals, arguing that the trial court erred by failing to award her any money for her PAGA claims. Guzman additionally argues the court abused its discretion by refusing to impose terminating or issue sanctions on LMF for discovery misconduct, or at least reopening discovery so that she could obtain information she alleges LMF improperly withheld.

We affirm. Guzman failed to introduce evidence of basic facts required to support her PAGA claim, such as the standard working hours of LMF's employees and their scheduled breaks. She argues that this evidence was missing because LMF wrongly withheld it during discovery, but key portions of the evidence were within her own personal knowledge or accessible to her. Furthermore, although we agree that LMF abused aspects of the discovery process, the trial court did not abuse its discretion by concluding this misconduct did not warrant the severe remedies of terminating or issue sanctions, or in concluding that the failure to obtain relevant information was due in large part to Guzman's

_____

[2] This award is not at issue in this appeal.

3

own lack of diligence in seeking discovery as opposed to LMF's largely ineffective attempts to prevent such discovery.

## FACTS AND PROCEEDINGS BELOW

### A.     Pretrial Proceedings

On October 19, 2016, Guzman filed a complaint alleging 10 causes of action against LMF.[3]  Guzman claimed that she had worked for LMF in food preparation and packaging from June 2003 to April 2016, that during the last four years of her employment she regularly worked 84.5 hours per week, that she was not paid at a higher rate for overtime hours, and that she was paid only in cash and did not receive paystubs recording her wages or hours worked.  In addition to demanding damages and penalties on her own behalf, Guzman also sought penalties under PAGA for similar Labor Code violations committed against other employees.

The parties fought bitterly over discovery, and we describe only those portions of the disputes relevant to the issues raised on appeal.  Guzman appears to have sought discovery regarding

---

[3] Guzman initially had a co-plaintiff, Lourdes Avila, but Avila subsequently decided to pursue her claims separately.  In addition to suing LMF itself, Guzman named as defendants two individuals associated with LMF on a theory of alter ego liability: LMF's owner Octaviano Leyva, and his daughter, Ana Maria Leyva, who managed the business while Guzman worked there. The court found no liability for the individual defendants, and Guzman does not challenge that aspect of the court's ruling.  For the sake of convenience, we refer to LMF in this opinion as the sole defendant.  In addition, we refer to Octaviano, Ana Maria, and Octaviano's other daughter, Gabriela Leyva, by their first names to distinguish among them.  We intend no disrespect.

4

her PAGA cause of action for the first time in November 2018,[4] more than two years after filing her complaint. Guzman was initially unable to obtain the information she sought from LMF, and in July 2019, shortly before trial was set to begin, the trial court re-opened discovery as to the PAGA cause of action. Shortly thereafter, Guzman served interrogatories on LMF seeking information on other employees who might have similar claims to Guzman's. Guzman does not explain why she did not act sooner.

In response to LMF's objection that disclosure would violate its employees' privacy rights, the trial court ordered the parties to employ a *Belaire-West*[5] process, under which a neutral administrator would mail all relevant employees a notice of the litigation and give them an opportunity to opt out of having their information released. LMF sent the administrator 21 names of current and former employees, but included mailing addresses for only 15 of the employees. The administrator mailed letters to these 15[6] employees and received opt-out postcards from nine of them. LMF submitted declarations from three of the remaining employees. These declarations, which were identical except for

---

[4] One of Guzman's attorneys filed a declaration stating that Guzman served discovery on LMF regarding the PAGA claim in November 2018, but the actual discovery request does not appear in the record.

[5] *Belaire-West Landscape, Inc. v. Superior Court* (2007) 149 Cal.App.4th 554.

[6] In her appellate brief, Guzman asserts that the administrator contacted only 12 employees, but the record indicates that there were 15.

the employee's name, stated that the employee drafted and signed an opt-out letter on March 6, 2020, and mailed it the following day. The administrator stated that he had not received an opt-out letter from any of these employees. Guzman filed a motion to compel the release of information pertaining to the three late objectors, and LMF dropped its objection to the production of the documents. Guzman's attorney filed a declaration stating that, at a hearing for which we lack any transcript, LMF's attorney admitted that Octaviano had contacted the three employees in question regarding the *Belaire-West* notice.

Guzman's attorney declared that he managed to contact two of the remaining employees, one of whom, Rosa Moreno, submitted a declaration of her own.[7] Moreno stated that she received the *Belaire-West* letter, but that she cannot read English and therefore could not read the letter. She brought the letter to a friend, who told her it had something to do with a lawsuit against LMF. Moreno decided to ignore the letter. Soon afterward, Moreno "was contacted by Octaviano['s] . . . daughter Gabriela. She came to my home and asked me if I had signed the letter. She asked me to sign the letter and give it to her. I felt very uncomfortable that my boss's daughter came to my house and questioned me about something like this." Moreno "told Gabriela that I had already signed the letter and sent [it] back in the mail. I did not sign the letter, but I feared that I might be fired if I admitted that to Gabriela."

---

[7] Guzman asserts that the second employee her attorney was able to contact, Teresa Romero, is Guzman's mother.

Guzman filed a motion for terminating sanctions, alleging that LMF had "improperly contacted and tampered with witnesses who were part of the *Belaire-West* notice process. Asserting there was "no more time available to restart the PAGA discovery process," Guzman argued that the only suitable remedy was to impose terminating sanctions, or at minimum issue sanctions prohibiting LMF from making any arguments against Guzman's PAGA claims. The trial court (Judge Kristin S. Escalante) denied the motion without prejudice, stating that it would "consider the issues raised in the motion at trial, after hearing live testimony by the witnesses involved." After the trial court made this ruling, Ana Maria, who had recently been added as a defendant in the case, filed a peremptory challenge under Code of Civil Procedure section 170.6 against Judge Escalante. The judge recused herself, and the case was assigned to a new judge for trial (Judge Anne Richardson).

## B.    Trial

During the trial, the parties presented evidence relating to the conditions of employment and payroll practices at LMF, as well as the discovery disputes.

### 1.    *Employment Conditions and Payroll Practices*

LMF has two locations: a headquarters in Bell Gardens, and a second location in El Monte. Ana Maria primarily worked in Bell Gardens, as did Guzman, whereas Moreno worked in El Monte and never met Guzman. LMF primarily manufactures food products, including tortillas, sopes, and bread, which are packaged and shipped to other businesses. LMF served some walk-up customers, but it was primarily a wholesaler. Guzman worked on the production line until 2016 making sopes, as well as bread and tortillas sometimes.

7

According to Ana Maria, all LMF employees were paid weekly. Some employees were paid in cash based on their timecards when they clocked in and out. These employees did not receive wage statements, nor was any money deducted from their wages for taxes. Instead, Ana Maria would attach a Post-it note to the timecard for the week indicating the amount the employee received in cash. In her deposition, Ana Maria estimated that, during Guzman's time at LMF, about five to seven employees received compensation in cash. The remaining employees were paid via check and did receive wage statements. LMF always paid employees the current minimum wage, and Ana Maria acknowledged that employees paid in cash were not paid at a higher rate for their overtime hours.

According to Ana Maria, LMF provided employees with one rest break of 10 to 15 minutes per day, though she later claimed that they received more breaks if they worked longer hours. Moreno testified that when she worked at LMF, she received a 10-minute break and a 30-minute meal break during her shifts.[8] In her deposition, Guzman testified that she was the only employee who received a 15-minute break for lunch, rather than

---

[8] Moreno testified that, prior to the COVID-19 pandemic, she usually worked a six-hour shift from 2:00 to 8:00 p.m., but she did not specifically testify as to how many breaks she received during these afternoon shifts. Moreno worked a morning shift at other times, with her work starting at 6:00 a.m., along with a 10-minute break at 6:30 a.m. and a 30-minute lunch break at 11:00 a.m.; Guzman's attorney did not ask her how long these morning shifts lasted. However, Moreno testified she worked 30 hours a week, which suggested her morning shift was also six hours long.

30 minutes. She explained that this was because sometimes when she was on break "they would come and get me, so that I had to get up and go serve the clients or answer the phone."

Guzman did not testify at trial regarding the number of hours she worked or attempt to estimate them. Instead, she introduced timecards for over four years of her employment at LMF, from January 2012 to April 2016, when she stopped working there. The timecards showed that Guzman generally worked 30 to 35 hours per week in 2012, and that her hours increased significantly in subsequent years. In 2013, she frequently worked over 50 hours per week, and in later years, she worked over 80 hours per week on more than one occasion. Each timecard included a note with a single dollar amount, but with no further documentation. For example, for the week of January 1, 2012, Guzman's timecard indicated that she worked 38 hours and 14 minutes, and the corresponding note reads "$304." This would indicate a pay rate of $8 per hour, the minimum wage in California at the time, for 38 hours. On cross-examination, Guzman acknowledged that her co-workers on the production line almost always left work earlier than she did, typically around noon. She did not testify as to when her or her co-workers' shifts began, nor as to how many breaks she or other co-workers received per shift.

2.   *Discovery*

Moreno testified that she received the *Belaire-West* letter but did not sign it. Gabriela approached her while she was at work and told her she needed to sign it, but Moreno refused. Gabriela then "told me that if I didn't sign it, I would get into trouble," and "that they would be taking me to court." Moreno then agreed to sign the document but "I tricked her and I didn't

9

actually sign it." About a week or two later, Gabriela called Moreno and asked if she had signed the document, noting that the attorney had not yet received it. Moreno lied and told Gabriela that she had sent it in.

Later, Gabriela brought Moreno another document to sign. This document related to the number of breaks the employees received, and Moreno testified she signed the document because "the truth is, we were being given breaks." Gabriela denied pressuring Moreno to sign the opt-out letter. She testified that Moreno called her first to ask about the *Belaire-West* letter, and that she told Moreno only that the letter pertained to a lawsuit.

Both Guzman and Ana Maria testified about the number of employees who worked at LMF, which was relevant to the issue of whether LMF had provided contact information to all employees who might have been affected by the *Belaire-West* proceeding. According to Ana Maria, LMF had about 15 to 20 employees who worked packaging foods at any given time. Guzman estimated that around 20 people worked as packagers at a time, and she identified 26 employees whose names she remembered, including 10 who worked similar hours with her on the packaging line. Ana Maria did not know why LMF had provided Guzman's attorneys with only three names of employees who might not have received overtime wages.

3. *Trial Court Statement of Decision*

The trial court awarded Guzman $6,055.39 in unpaid overtime and $4,000 in penalties for failure to provide itemized wage statements but denied any relief under PAGA. In a statement of decision, the court explained that Guzman's PAGA claim failed for two reasons. First, Guzman "inaccurately analyzed [her] representative PAGA claims as class damages,"

10

seeking damages for unpaid overtime and statutory penalties for employees who did not receive pay stubs, as if her fellow employees were members of a class in a class action, rather than the penalties available under PAGA (see § 2699, subd. (f)). Second, Guzman conceded "that no coherent evidence was introduced at trial from which this [c]ourt could come up with a reasonable number of violations, for what subset of aggrieved employees."

The court found that, despite having access to at least five other employees' personnel files, Guzman was able to establish only a single piece of evidence indicating violations of the Labor Code with respect to anyone other than herself. This was Ana Maria's admission "that L[MF] . . . employ[ed] [five] to [seven] employees at any given time who were paid in cash, and that all employees who were paid in cash did not receive their proper itemized pay statements." But Guzman "fail[ed] to provide any evidence by which this [c]ourt can calculate the PAGA penalties based on this admission, asking [instead for] the [c]ourt to allow [her] to provide the calculations or reopen discovery to allow [her] to do so. . . . [Guzman's p]roposed [o]rder engages in a hypothetical analysis of such penalties (based on various assumptions never introduced into evidence) for the very first time, coming up with a total of $2,395,000 for this violation alone. Such an analysis is far too late—the evidence to support the requested penalties should have been provided at trial when it properly could have been submitted to cross examination."

The court also denied Guzman's request for terminating or issue sanctions, or in the alternative to reopen discovery. The court found Moreno's testimony that Gabriela had contacted her and tried to convince her to sign the opt-out document "credible,"

11

but was "unpersuaded that the conduct caused actual prejudice to" Guzman, given that Guzman was able to speak with Moreno and presumably obtained a copy of her personnel file yet was unable to show any violations of employment law.  The court acknowledged, however, "a concern . . . as to whether other witnesses, whose testimony the [c]ourt did not hear, were similarly pressured to preclude discovery as to them."

Despite this concern, the court was unwilling to impose terminating or evidentiary sanctions because although Guzman "claim[ed] that [LMF] had violated prior court orders, no such specific court order was ever mentioned at trial or in the closing brief."  Nor was the court persuaded that the effort to convince Moreno to opt out, coupled with the high number of opt outs by other LMF employees, demonstrated "a pattern of willful discovery abuse" that would justify the imposition of such severe sanctions in the absence of violation of a court order.  Furthermore, Guzman's "lack of evidence supporting her claims other than her own personnel file . . . simply would make a default against [LMF] a windfall to [Guzman] that would be arbitrary and disproportionate to the fault shown by [Guzman].  Put another way, even if the [c]ourt were to strike [LMF's a]nswer, [Guzman] simply did not make out a prima facie case of liability and damages or penalties . . . so as to make likely the appropriateness of the kind of broad relief [Guzman] wanted."

Finally, the court denied Guzman's request to reopen discovery to allow her to obtain additional personnel documents that she alleged LMF improperly withheld because seven years had elapsed from the initial filing of the complaint in 2016 and the trial in 2023, and Guzman "has not shown any good reason why this discovery and any additional motions were not made

years ago." Indeed, in her 2021 motion for terminating sanctions, Guzman did not raise the idea of reopening discovery because "[t]he five-year statute is fast approaching, and there is no time to redo this discovery."

## DISCUSSION

### A. The Trial Court Did Not Err in Declining to Award PAGA Penalties

The Legislature enacted PAGA to provide a mechanism "to allow aggrieved employees, acting as private attorneys general, to recover civil penalties for Labor Code violations." (*Arias v. Superior Court* (2009) 46 Cal.4th 969, 980.) The penalties recovered in a PAGA suit are divided, with 75 percent going to the Labor and Workforce Development Agency, and the aggrieved employee keeping the remaining 25 percent. (*Id.* at pp. 980-981; see § 2699, subd. (i).) The burden of proof in a PAGA action is the same as that in any other civil action, i.e., the plaintiff must prove the violations of the Labor Code "by a preponderance of the evidence." (Evid. Code, § 115.)

The trial court found that Guzman failed to meet that burden because "no coherent evidence was introduced at trial from which this [c]ourt could come up with a reasonable number of violations, for what subset of aggrieved employees," and that Guzman was "proposing instead to make estimates which are divorced from any trial testimony."

Guzman argues this was error. She claims that Ana Maria conceded the existence of Labor Code violations when she admitted that other employees in addition to Guzman were not paid at a higher rate for overtime hours they worked, and that at any given time, somewhere between five and seven employees were paid in cash and did not receive pay stubs. At that point, in

13

Guzman's view, "the burden should have shifted to [LMF] to come forward with evidence of the precise amount of overtime work performed or with evidence to negative the reasonableness of the inference to be drawn from [Guzman]'s evidence. Since [LMF] failed to produce any such evidence, the trial court should have awarded PAGA penalties to aggrieved employees, even though the result be only approximate."

In support of her position, Guzman cites cases where, in the face of missing records, courts have shifted the burden of establishing the precise amount of damages to the employer. In *Furry v. East Bay Publishing, LLC* (2018) 30 Cal.App.5th 1072, disapproved on another ground by *Naranjo v. Spectrum Security Services, Inc.* (2024) 15 Cal.5th 1056, 1090, fn. 11, the court held that an employee's testimony of his work hours "based on his recollection of his workload over the years, the duties and tasks he performed in connection with specific events, and the specific tasks that went into creating" items for his employer was sufficient to shift the burden to the employer. (*Furry*, *supra*, at p. 1080.) "Because [the employer] could not provide accurate work records, the trial court had a 'duty to draw whatever reasonable inferences it can from [the employee's] evidence.' [Citation.]" (*Id.* at p. 1082.) Similarly, in *Hernandez v. Mendoza* (1988) 199 Cal.App.3d 721, where the employer submitted timecards that the trial court described as " 'clearly made up' " (*id.* at p. 725), the court held that the employee could recover on the basis of his testimony regarding the hours he usually worked. (*Id.* at pp. 727-728.) The court reasoned that "[o]nce an employee shows that he performed work for which he was not paid, the *fact* of damage is certain; the only uncertainty is the *amount* of damage. [Citations.] In such a case, it would be a perversion of

14

justice to deny all relief to the injured person, thereby relieving the wrongdoer from making any restitution for his wrongful act. [Citation.]" (*Id.* at pp. 726-727.) Finally, in *Velasco v. Mis Amigos Meat Market, Inc.* (E.D.Cal., Oct. 23, 2013, No. 2:08-cv-0520-TLN-EFB PS) [2013 WL 5755054], a federal district court entered default judgment in favor of a group of employees both under PAGA and in a direct action for unpaid wages on the basis of declarations regarding the hours they worked and their working conditions. The court stated that "[w]here an employer fails to maintain accurate and complete payroll records, California courts shift the burden of calculating the number of uncompensated hours to the employer, reasoning that 'applying the normal burden of proof in such circumstances would unfairly penalize an employee for the employer's failure to keep proper records and would allow the employer to keep the benefits of the employee's labors without paying full compensation.' [Citation.]" (*Id.* at p. *6.)

But in each of the cases Guzman cites, the employees provided some basis on which to estimate the unpaid wages. The burden does not shift to the employer until the employee " 'produces sufficient evidence to show the amount and extent of [uncompensated] work as a matter of just and reasonable inference.' " (*Hernandez v. Mendoza*, *supra*, 199 Cal.App.3d at p. 727.) Here, in contrast, Guzman did not establish *any* basis on which to estimate unpaid wages for other employees. She did not even testify as to her own actual hours but instead relied on LMF's timecards (based on which the court awarded her $6,055.39, an amount with which Guzman does not quibble). We echo the trial court, which "searched in vain—both in the trial transcripts and in the [p]ost-[t]rial [b]riefs' citations to the trial

15

transcripts—for testimony regarding the number of hours [Guzman] worked and the number of breaks she received. . . . [¶] . . . [Guzman] never was asked about the following critical pieces of information: 1) when did she start working at L[MF]; 2) when did she stop; 3) what were her shift hours; 4) did the shifts ever vary; 5) what breaks did she receive; 6) did the breaks ever vary and if so, what was her best estimate as to how often she missed breaks; or, relevant to the PAGA claim, 7) whether the other workers who she worked with got breaks, and so forth."[9]

Guzman complains that she was unable to produce evidence of her claims because LMF failed to provide documentation. This ignores that she worked at the business, was aware of and could estimate the hours she worked, and observed the hours worked and rest breaks taken by others at the Bell Gardens factory—none of which she offered testimony about. It also overlooks several potential sources of information to which she had access beyond her own knowledge and observations. One of her co-workers was her mother. Another was her sister, still another was an ex-boyfriend, and yet another was her former co-plaintiff in this case who was represented by Guzman's counsel for at least the first two years of litigation. In the absence of any supported explanation by Guzman as to why she could not

---

[9] In her appellate brief, Guzman claims she "worked between 10 and 16 hours per day, usually six days per week." In support of this claim, she cites a passage from her testimony in which she described the nature of her work at LMF but did *not* estimate her work hours, as well as a section of her posttrial brief in which she made the same claim about her work hours, but without any apparent support in her testimony or in other evidence.

16

produce the most basic information from such sources to support her claims, "[w]e are bound by the fundamental appellate rule that the judgment of the lower court is presumed correct and that all intendments and presumptions will be indulged in favor of its correctness." (*Fowler v. Golden Pacific Bancorp, Inc.* (2022) 80 Cal.App.5th 205, 224-225.)

Guzman did obtain the names and personnel records of the three LMF employees who submitted late opt-out postcards, but the trial court declined to admit these pay records except for purposes of impeachment because Guzman failed to place them on her exhibit list until the day before trial was to begin.[10] These exhibits do not support her position anyway. The pay stubs show that all three employees generally worked no more than 40 hours per week, and that, when they worked more than eight hours in a day, they were paid for overtime at 1.5 times their regular hourly rate.

Additional trial testimony regarding working conditions at LMF undermined Guzman's claims. Guzman asserted that other employees worked similar hours to her own, but on cross-examination she admitted that her co-workers almost always left before she did. She also admitted that her co-workers received longer breaks than she did. Moreno's testimony contradicted Guzman's claims that LMF's employees worked unrelenting long hours. Moreno's testimony indicated that she typically worked a six-hour workday. The length of these shifts is important

_____

[10] Guzman brands this enforcement of basic trial preparation rules as "frivolous" but makes no reasoned argument in support of her position, nor does she explain why she failed to include the records on the exhibit list in a timely manner.

17

because employees who work six-hour shifts are entitled to only one 10-minute break in addition to a 30-minute meal period. (*Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004, 1031.) Moreno testified that she received one 10-minute rest break and one 30-minute meal break.

Finally, Guzman contends that even if she failed to support her PAGA claim with respect to her co-workers, the trial court erred by failing to impose PAGA penalties on LMF for violations of the Labor Code as to Guzman herself. She argues these penalties amounted to $10,300, which she calculates by taking "$100 plus the product of (x) $200 times (y) 51 pay periods." But Guzman does not explain where these numbers come from, nor have we seen any indication that she argued for such an award before the trial court. Instead, as the trial court noted, Guzman's posttrial brief analyzed her PAGA claim as if it were a class action suit, even though "a PAGA claim is not simply a collection of individual claims for relief, and so is different from a class action." (*Kim v. Reins International California, Inc.* (2020) 9 Cal.5th 73, 86.) Guzman forfeited any claim to PAGA penalties by failing to present the argument she makes on appeal to the trial court, where LMF would have had an opportunity to contest the amount of the claim, and by failing even now to explain the basis of her calculation.

## B.   The Trial Court Did Not Abuse its Discretion by Declining to Award Terminating or Evidentiary Sanctions, or to Reopen Discovery

Guzman contends the court abused its discretion by denying her motion for terminating or issue sanctions, and by denying her request to reopen discovery after the trial was over

18

to allow her to obtain missing personnel files to help establish the extent of LMF's violations of employment law.[11]  We disagree.

In 2021, Guzman filed a motion for terminating or issue sanctions on the ground that LMF abused the discovery process by pressuring its employees to opt out of the *Belaire-West* process. Because the trial date was imminent and the five-year limit under Code of Civil Procedure section 583.310 was fast approaching, Guzman decided against seeking any lesser or alternative remedy that would have resulted in a trial postponement.  Given the nature of the sanctions sought, and the looming trial date, the trial court denied the motion without prejudice, stating that it would "consider the issues raised in the motion at trial, after hearing live testimony by the witnesses involved."  In her posttrial brief, Guzman renewed her motion for terminating or issue sanctions and for the first time[12] requested

---

[11] Guzman goes further and argues that the trial court erred by requiring a *Belaire-West* process at all rather than ordering the release of LMF's personnel records to her subject to a protective order or with redactions to protect any private information.  Guzman cites nothing in the record to show that she ever made this suggestion to the trial court or objected to the court's decision to employ a *Belaire-West* procedure.  We therefore deem the argument forfeited.  (See *J.W. v. Watchtower Bible & Tract Society of New York, Inc.* (2018) 29 Cal.App.5th 1142, 1170 ["We cannot conclude the trial court abused its discretion by failing to enter an order that was never suggested"].)

[12] On the first day of the trial, Guzman requested that the trial court "reopen discovery in [a] limited aspect to allow us to perform our own forensic audit as to who the potential aggrieved employees are."  This request was for the disclosure of the names of employees, not for access to their personnel documents or any

19

in the alternative that the court order LMF to produce the personnel documents for all the affected employees to allow for a more precise determination of the extent of Leyva's violations.

In its statement of decision, the trial court denied both of Guzman's requests, finding that Guzman had failed to show either a violation of a court order or a pattern of willful discovery violations, as would be required to order terminating or evidentiary sanctions. The court declined to reopen discovery because Guzman failed to act diligently to obtain the discovery, and did not propose reopening discovery to allow access to additional employee records until after the trial.

We review a trial court's decision on a motion for discovery sanctions for abuse of discretion. (*New Albertsons, Inc. v. Superior Court* (2008) 168 Cal.App.4th 1403, 1422.) "An abuse of discretion occurs if, in light of the applicable law and considering all of the relevant circumstances, the court's decision exceeds the bounds of reason and results in a miscarriage of justice. [Citations.] The abuse of discretion standard affords considerable deference to the trial court, provided that the court acted in accordance with the governing rules of law." (*Ibid.*)

Sanctions are designed to be imposed incrementally. " 'If a lesser sanction fails to curb misuse, a greater sanction is warranted: continuing misuses of the discovery process warrant incrementally harsher sanctions until the sanction is reached that will curb the abuse.' " (*Padron v. Watchtower Bible & Tract Society of New York, Inc.* (2017) 16 Cal.App.5th 1246, 1259.)

_____

other company information. The trial court denied the motion because the parties had "declare[d] ready for trial . . . already a couple of times" and "the time has come to get this case concluded."

20

Under this principle, a court ordinarily may not impose an issue, evidence, or terminating sanction unless a party has failed to obey a court order compelling discovery. (*New Albertsons, Inc. v. Superior Court*, *supra*, 168 Cal.App.4th at p. 1423.) Nevertheless, "if it is sufficiently egregious, misconduct committed in connection with the failure to produce evidence in discovery may justify the imposition of nonmonetary sanctions even absent a prior order compelling discovery, or its equivalent." (*Id.* at p. 1426.)

The trial court found that LMF had abused the discovery process by encouraging Moreno to respond to the *Belaire-West* notice by opting out. LMF baldly asserts that it engaged in no such abuse, and that any claim to the contrary is "simply fiction." We disagree. LMF's conduct in encouraging or pressuring Moreno to opt out was improper. The failure of LMF and its counsel to accept responsibility for this misconduct is not exculpatory but rather a cause for further concern. Nevertheless, despite the misconduct the court declined to order issue or terminating sanctions because Guzman failed to show that LMF violated a court order and "[t]here was no . . . pattern of violations." Furthermore, LMF's misconduct had not caused the loss of any evidence, in that Guzman was able to bring Moreno to testify about her working conditions. This conclusion was reasonable, and we perceive no abuse of discretion.

We share the trial court's "concern . . . as to whether other witnesses, whose testimony the [c]ourt did not hear, were similarly pressured to preclude discovery as to them." We are also concerned as to whether LMF withheld information on some of its employees from the *Belaire-West* administrator. The trial court concluded, however, that such concerns did not warrant

21

imposing the harshest sanctions possible, and we agree, for two reasons.

First, evidence in the record suggests that LMF lacked accurate information on some of its employees. Ana Maria testified that LMF hired workers who lacked legal documentation to work and paid them in cash. The record shows at least two instances in which employees worked under false names. In her deposition, Ana Maria testified that one employee "filled out her work application under the name Guadalupe Garcia. She gave me a Social Security number, which was not valid. Then a few months later when she told me she was leaving the country, that's when I understood that she had an illegal Social Security number, and that her name was Maria Valenzuela." Guzman herself testified that she worked for a time under the name of her then-boyfriend, Alberto Vazquez. If LMF failed to provide the *Belaire-West* administrator with names and contact information for its current and former employees, that does not necessarily make it more likely that the administrator would have reached those employees given that a number of them did not provide LMF with accurate information.

Second, Guzman had access to significant amounts of information regarding other employees but was unable to prove that LMF violated the Labor Code more broadly than her own overtime and pay statement claims. As the trial court noted, despite LMF's resistance to discovery, Guzman had at least five personnel files in addition to her own: the files of her mother, her former co-plaintiff, Avila, and the three late opt-outs. In addition, Guzman testified that her sister and her former boyfriend worked at LMF at various times. Yet Guzman failed to introduce any of these files at trial, nor did she call any of these

fellow employees as witnesses. As we noted above, the only evidence we have seen regarding the work schedules of Moreno and the late opt-outs did not support but rather undermined Guzman's claims of widespread underpayment and denial of required rest breaks.

Even if we assume the worst of LMF for denying Guzman access to additional names and personnel files, there is no reason to believe this deprived her of meaningful evidence in support of her claims. As the trial court noted, issue sanctions are available in the absence of a violation of a prior court order "when the offending party has engaged in a pattern of willful discovery abuse *that causes the unavailability of evidence*." (*Karlsson v. Ford Motor Co.* (2006) 140 Cal.App.4th 1202, 1215, italics added.) Guzman has failed to show that LMF's actions deprived her of evidence in a meaningful way. Or, to put it another way, nonmonetary sanctions are appropriate when "necessary to remedy . . . misconduct and ensure a fair trial." (*New Albertsons, Inc. v. Superior Court, supra*, 168 Cal.App.4th at p. 1434.) There is no indication that LMF's misconduct deprived Guzman of a fair trial.

To affirm the trial court's order denying sanctions does risk rewarding LMF for its abuse of the discovery process. Yet Guzman's decision to swing for the fences in seeking the sanctions she did left the trial court with no viable alternative. Discovery sanctions may not be imposed solely to punish the offending party. (*LCPFV, LLC v. Somatdary Inc.* (2024) 106 Cal.App.5th 743, 762.) But that is precisely what Guzman sought—a significant payout on claims she failed to prove even though substantial evidence (such as her own personal knowledge, Moreno's testimony, and multiple personnel files

23

produced to her) was available to her. As the trial court noted, Guzman's "lack of evidence supporting her claims other than her own personnel file . . . simply would make a default against [LMF] a windfall to [Guzman] that would be arbitrary and disproportionate to the fault shown."

Guzman argues the trial court erred when it refused in 2021 to hear testimony from Moreno in connection with Guzman's motion for terminating sanctions. According to Guzman, "[h]ad the trial court heard . . . Moreno in connection with [Guzman]'s motion for terminating sanctions, then there would have been time for [Guzman] to subpoena other aggrieved employees and for the trial court to compel the production of the personnel records of aggrieved employees subject to a protective order or to order [LMF] to provide [Guzman] with the correct contact information for the aggrieved employees whom [the *Belaire-West* administrator] did not contact." This misconstrues the record. Guzman's motion was for terminating or issue preclusion sanctions. She did not request to subpoena additional employees or compel the production of additional personnel records because, as she claimed then, "there is no time to redo this discovery." It was only in her posttrial brief, and not in connection with her motion, that Guzman requested an alternative sanction. Guzman spends several pages of her opening brief on appeal detailing the fight over the *Belaire-West* process, but at no point does she state that she requested an order giving her access to additional employee personnel files apart from those pertaining to the late opt-outs. The trial court did not abuse its discretion by denying the extreme relief of terminating or issue sanctions, nor in determining that Guzman

24

had waited too long to change course and request additional discovery.

## DISPOSITION

The trial court's judgment is affirmed.  The respondents are awarded their costs on appeal.

NOT TO BE PUBLISHED


WEINGART, J.


We concur:


BENDIX, Acting P. J.


M. KIM, J.